2007 UT App 11

**Kent A. HEIDEMAN; Kimball B. Gardner; and Birdview Manufacturing Inc., a Utah corporation, Plaintiffs and Appellants,**

v.

**WASHINGTON CITY, a Utah municipal corporation; and unknown persons working for or under the authority of Washington City, Defendants and Appellees.**

No. 20050941–CA.

Court of Appeals of Utah.

Jan. 11, 2007.

---

Justin R. Elswick and Justin D. Heideman, Ascione Heideman & McKay, LLC, Provo, for Appellants.

Jeffrey N. Starkey and Bryan J. Pattison, Durham Jones & Pinegar, St. George, for Appellees.

Before GREENWOOD, Associate P.J., BILLINGS and ORME, JJ.

1. Plaintiff Birdview Manufacturing, Inc. was not named as a claimant in Plaintiffs' notice of claim, *see* Utah Code Ann. § 63–30–11(2) (Supp. 2003), *repealed by id.* § 63–30d–401 (2004), and was therefore barred from pursuing any claim for intentional interference with economic relations against the City. *See Pigs Gun Club, Inc. v. Sanpete County*, 2002 UT 17, ¶ 10, 42 P.3d 379 ("Each plaintiff's name must be on the notice of claim.").

## OPINION

GREENWOOD, Associate Presiding Judge:

¶ 1 Kent A. Heideman, Kimball B. Gardner, and Birdview Manufacturing, Inc.(collectively, Plaintiffs)[1] appeal the trial court's grant of summary judgment in favor of Defendant Washington City (the City), claiming the trial court erred in concluding that (1) Plaintiffs' notice of claim was defective because it failed to name all possible causes of action, (2) there were no genuine issues of material fact, (3) Plaintiffs did not have a protected property interest at stake, (4) the City had not converted Plaintiffs' property, (5) the City's conduct did not amount to an unconstitutional taking, (6) the parties had not entered into a contractual relationship, (7) the City had not breached any contracts with Plaintiffs, and (8) the City had not breached the implied covenant of good faith and fair dealing. We affirm.

## BACKGROUND

¶ 2 On October 23, 2002, the City passed Ordinance Number 2002–13 (the Ordinance), *see* Washington City, Utah, Ordinance 2002–13 (Oct. 23, 3002), which increased water impact fees from $2284 to $3182 per dwelling unit.[2] During the October 23 hearing at which the Ordinance was first discussed, Plaintiff Kent Heideman, a city council member and land developer, expressed concern about when the Ordinance would go into effect. Mr. Heideman argued that the city council should give developers, including himself, "thirty days to get [current projects] wrapped up." Council member Roger Bundy stated that the City of St. George "had a stampede" when it did as Mr. Heideman suggested. When it came time to vote on the

2. Impact fees are sums of money "imposed upon development activity as a condition of development approval." Utah Code Ann. § 11–36–102(7)(a) (Supp.2006). Municipalities are authorized to charge them under Utah's Impact Fees Act. *See id.* §§ 11–36–101 to –501 (2003 & Supp.2006).

Ordinance, Mr. Bundy stated that "there may be some people that have permits sitting there ready to be pulled," and he thought a two-week waiting period was necessary.[3] The council ultimately voted to approve the Ordinance with a November 6, 2002 effective date.

¶ 3 On November 6, 2002, Mr. Heideman tendered two checks to the City for a total of $150,744 and requested sixty-six "water impact fee permits"[4] at the prior rate of $2284. On the same day, Plaintiff Kimball Gardner, on behalf of Birdview Manufacturing, Inc., provided the City with a $34,230 check and $30 in cash for fifteen water impact fee permits at the $2284 rate. The City's front office staff accepted the payments from Mr. Heideman and Mr. Gardner and issued receipts indicating that the payments were for "66 water impact fees" and "15 water impact fees" respectively. Both checks were negotiated and deposited into the City's financial account. Prior to accepting Plaintiffs' payments, the City's front office staff had not received any instruction regarding the impact fee rate increase.

¶ 4 At the next city council meeting, on November 13, 2002, the council addressed the fact that there was some confusion regarding prepayment of impact fees. Specifically, the council discussed the fact that builders usually pay impact fees when their building permits are ready for approval, but in response to the fee increase, some were paying impact fees early. The city attorney stated that "[t]here needs to be clarification to exceptions to early payment of impact fees put on the agenda for the Council to approve." The mayor then stated that the city manager would contact those who had prepaid and let them know the issue would be on the next city council meeting's agenda for purposes of clarification. The next hearing to discuss the impact fees was set for December 11, 2002, and public notice was promptly posted.

¶ 5 At the December 11 hearing, the agenda item, "Clarification of the pre-purchasing of fees concerning the increase of the Water Impact Fee that was effective November 6, 2002," was addressed. The council discussed the following issues: the City's intent to tie impact fees to specific lots, whether the two-week time frame was meant to accommodate building permits that were being pulled during the two-week period, and how the City would proceed with prepaid impact fees from those who were not at the meeting.

¶ 6 During the meeting, the city council expressed concern that if it accepted all of the prepayments, it would simply need to raise the fees again to accommodate more growth. The council then allowed audience members to comment, at which time Mr. Gardner argued that the City should honor his prepayments and "stick by [the] contract that [it] made when [it] cashed the check." The city attorney responded that "[b]re[a]ch of contract is not an issue because the staff does not have authority to enter into a contract." Mr. Heideman requested an executive session to address his payments to the City; however, his request was not granted. He made no additional statements. At the close of the discussion, the mayor announced that "those people who have prepaid the impact fees and have not pulled their permits have two weeks until December 26[ ] to pull their permits, if they don't meet ... the City's criteria then the City will refund their money." Neither Mr. Heideman nor Mr. Gardner submitted building permits to the City by the December 26, 2002 deadline.

¶ 7 On January 27, 2003, the City mailed a certified letter to Mr. Heideman stating that he was not entitled to prepay water impact fees because he failed to present the City with a building permit prior to the December 26 deadline. The City enclosed a check, dated January 2, 2003, for $150,744. Mr. Heideman returned the check on January 30, 2003. A similar letter was mailed to Mr. Gardner. However, after three failed deliv-

---

3. The term "pulled" is used to refer to a building permit that is ready to be issued.

4. Although Plaintiffs repeatedly refer to "permits" throughout their brief, there are no permits at issue in this case. An impact fee is a condition precedent to a building permit, *see* Utah Code Ann. § 11–36–102(7)(a); it is not a "tax, a special assessment, a building permit fee, ... or other reasonable permit or application fee." *See id.* § 11–35–102(7)(b).

ery attempts, it was returned to sender. Mr. Heideman claims he eventually accepted payment after the City stipulated, at a temporary restraining order (TRO) hearing, that he could preserve his claims for litigation despite receiving the refund. However, there is no evidence of the stipulation agreement or the TRO hearing in the record on appeal. There is also no evidence regarding when Mr. Heideman actually cashed the City's check.[5]

¶ 8 On or about February 4, 2003, Mr. Heideman filed a notice of claim with the City.[6] *See* Utah Code Ann. § 63–30–11 (Supp. 2003). In the nature of claims section, Mr. Heideman listed the following claims: breach of contract, " § 1983 claims against certain city officials," and "[o]ther causes of action." On or about April 2, 2003, Mr. Heideman filed another notice of claim adding Mr. Gardner as a claimant. Other than the additional claimant, the two notices were identical.

¶ 9 On March 12, 2003, Plaintiffs filed a complaint against the City alleging breach of contract and breach of the duty of good faith and fair dealing. About six months later, Plaintiffs filed an amended complaint alleging, in addition to the two previous claims, governmental taking without just compensation, conversion, violation of due process, and violation of appellants' civil rights under chapter 42, section 1983 of the United States Code. Eight months later, Plaintiffs filed yet another amended complaint, this time adding claims for attorney fees under section 1988 of the United States code and "the private attorney general doctrine," and a claim for

intentional interference with prospective economic relations.

¶ 10 After filing the second amended complaint, Plaintiffs moved for summary judgment. The City opposed, and filed its own cross-motion for summary judgment and motion to strike the substantive paragraphs of Mr. Heideman's's affidavit submitted in support of Plaintiffs' motion for summary judgment.[7] On October 22, 2004, the trial court granted the City's motion for summary judgment and denied Plaintiffs'. Plaintiffs filed a motion to reconsider, which the court denied. They now appeal.

## ISSUES AND STANDARD OF REVIEW

¶ 11 Plaintiffs argue the trial court erred in granting the City's cross-motion for summary judgment based on its conclusions that (1) Plaintiffs' notice of claim was defective because it failed to name all possible causes of action, (2) there were no genuine issues of material fact, (3) Plaintiffs did not have a protected property interest at stake, (4) the City had not converted Plaintiffs' property, (5) the City's conduct did not amount to an unconstitutional taking, (6) the parties had not entered into a contractual relationship, (7) the City had not breached any contracts with Plaintiffs, and (8) the City had not breached the implied covenant of good faith and fair dealing. Summary judgment is only appropriate when there are no genuine issues of material fact and the parties are entitled to judgment as a matter of law. *See* Utah R. Civ. P. 56(c). Consequently, we review the trial court's legal conclusions for correctness. *See Jones v. Salt Lake City Corp.*, 2003 UT

---

5. On appeal, Plaintiffs request interest for the "almost 6 month period" in which the City "wrongfully retained" their funds. Plaintiffs specifically request such relief for the first time in this appeal. All of their pleadings in the trial court sought delivery of the "permits." Moreover, Plaintiffs fail to provide any evidence documenting for how long the City held their funds. Therefore, we will not address their claim for interest on the funds. *See State v. Irwin*, 924 P.2d 5, 7 (Utah Ct.App.1996) ("It is a well-established rule that a defendant who fails to bring an issue before the trial court is generally barred from raising it for the first time on appeal.").

6. After Plaintiffs filed their notice of claim, the Utah Legislature repealed the Governmental Im-

munity Act, *see* Utah Code Ann. §§ 63–30–01 to –38 (1997 & Supp.2003) (repealed), and replaced it with the Governmental Immunity Act of Utah, *see id.* §§ 63–30d–101 to –904 (2004). Because Plaintiffs' notice of claim was filed when the Governmental Immunity Act was effective, we refer to that version of the legislation. *See Cook v. City of Moroni*, 2005 UT App 40, ¶ 1 n. 1, 107 P.3d 713.

7. Plaintiffs' motion was supported with citations to the record and Mr. Heideman's own sworn affidavit. The trial court struck the affidavit as improper. Plaintiffs do not appeal that ruling, yet refer to the affidavit in their brief. This court will not consider the stricken affidavit.

App 355, ¶ 7, 78 P.3d 988. In doing so, "we view the [undisputed] facts in a light most favorable to the party against which the motion was granted." *Anderson v. Provo City Corp.*, 2005 UT 5, ¶ 10, 108 P.3d 701 (alteration in original) (quotations and citations omitted).

## ANALYSIS

### I. Plaintiffs' Notice of Claim

■ ¶ 12 The trial court held that Plaintiffs' intentional interference claim was jurisdictionally barred because, among other reasons, the notice of claim was defective. The Governmental Immunity Act (the Act) requires individuals with claims against government entities to comply with the notice of claim requirements set forth in Utah Code section 63–30–11. *See* Utah Code Ann. § 63–30–11 (1997 & Supp.2003). Failure to strictly comply with these requirements results in a lack of jurisdiction. *See Gurule v. Salt Lake County*, 2003 UT 25, ¶ 5, 69 P.3d 1287; *Greene v. Utah Transit Auth.*, 2001 UT 109, ¶¶ 15–16, 37 P.3d 1156.[8]

■ ¶ 13 The Act specifically requires the notice of claim to include "(i) a brief statement of the facts; (ii) the nature of the claim asserted; and (iii) the damages incurred by the claimant so far as they are known." Utah Code Ann. § 63–30–11(3)(a). In Plaintiffs' notice of claim, they listed three potential claims against the City: "Breach of Contract[,] § 1983 claims against certain city officials[,] ... and [o]ther causes of action." Plaintiffs now argue that this was sufficient to put the City on notice of an intentional interference with economic relations claim. They assert that the document, when viewed as a whole, "provided Appellees sufficient opportunity to investigate, discuss and resolve the potential claim before the parties became locked in a lawsuit." This argument, however, is unpersuasive.

¶ 14 The requirement of strict compliance derives from the fact that the ability to sue the government is "a statutorily created ex-

ception to the Doctrine of Sovereign Immunity. Inasmuch as the maintenance of such a cause of action derives from such statutory authority, a prerequisite thereto is meeting the conditions prescribed in the statute." *Gallegos v. Midvale City*, 27 Utah 2d 27, 492 P.2d 1335, 1336–37 (1972). Although Plaintiffs cite to cases liberally applying the strict compliance requirement, those cases predate the Act's 1998 amendment. "As [the supreme court] stated in *Gurule [v. Salt Lake County*, 2003 UT 25, 69 P.3d 1287], we have allowed for 'less than strict compliance [only] in cases which depended upon ambiguities in the ... Act; ambiguities clarified by the 1998 amendments.'" *Davis v. Central Utah Counseling Ctr.*, 2006 UT 52, ¶ 44, 147 P.3d 390 (third alteration in original) (quoting *Gurule*, 2003 UT 25 at ¶ 7, 69 P.3d 1287). Moreover, there is no ambiguity in the nature of claim requirement: "There must be enough specificity in the notice to inform as to the nature of the claim so that the defendant can appraise its potential liability." *Yearsley v. Jensen*, 798 P.2d 1127, 1129 (Utah 1990). In this case, Plaintiffs' notice of claim failed to indicate that they intended to pursue an intentional interference with economic relations claim. Therefore, Plaintiffs are precluded from raising that claim on appeal, and the trial court was correct in concluding that it lacked jurisdiction to consider it.

### II. Disputed Facts

¶ 15 Plaintiffs attempt to raise the issue, for the first time on appeal, that there was a dispute regarding the Ordinance's effective date, thereby making summary judgment inappropriate. However, they are barred from raising this issue on appeal because it was not argued below. *See State v. Richins*, 2004 UT App 36, ¶ 8, 86 P.3d 759 ("In order to preserve an issue for appeal, it ... must be specifically raised such that the issue is sufficiently raised to a level of consciousness before the trial court, and must be supported by evidence or relevant legal authority." (quotations and citation omitted)).

---

8. Because the notice of claim provision is the same in both versions of the Act, *see* Utah Code Ann. §§ 63–30–01 to –38 (1997 and Supp.2003); *id.* §§ 63–30d–101 to –904 (2004), case law ad- dressing the notice of claim requirement under either version governs. *See Johnson v. Utah Dep't of Transp.*, 2006 UT 15, ¶ 12 n. 6, 133 P.3d 402.

¶ 16 More precisely, in the context of summary judgment, we are confined to the disputed facts that were properly before the trial court. *See Granite Credit Union v. Remick,* 2006 UT App 115, ¶ 10 n. 4, 133 P.3d 440. In this instance, there are no disputed issues of material fact in the record. In fact, in their motion for summary judgment, Plaintiffs included a lengthy undisputed facts section, after which they stated, "[T]here are no remaining genuine issues as to any material facts." When they responded to the City's motion for summary judgment, Plaintiffs disputed three facts, but did not put any of these facts at issue because they failed to support their memorandum with any admissible evidence, as required by rule 7 of the Utah Rules of Civil Procedure. *See* Utah R. Civ. P. 7(c)(3)(B). Consequently, we do not further address Plaintiffs' argument that there were disputed issues of material fact.[9]

### III. Protected Property Interest

¶ 17 Plaintiffs claim that they had a protected property interest in the water impact fee "permits" because they had a "legitimate claim of entitlement" to them.[10] The Fourteenth Amendment prohibits states from depriving its citizens of "property without due process of law." U.S. Const. amend. XIV, § 1. To prevail on a due process claim, a party must first establish that it has a "protectible property interest." *Hyde Park Co. v. Santa Fe City Council,* 226 F.3d 1207, 1210 (10th Cir.2000); *see also Patterson v. American Fork City,* 2003 UT 7, ¶ 23, 67 P.3d 466. This is an interest in which one has " 'a legitimate claim of entitlement.' " *Patterson,* 2003 UT 7 at ¶ 23, 67 P.3d 466 (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). It is not "an abstract need for, or

[a] unilateral expectation of, a benefit." *Hyde Park,* 226 F.3d at 1210. Rather, it is a "right to a particular decision reached by applying rules to facts." *Fleury v. Clayton,* 847 F.2d 1229, 1231 (7th Cir.1988).

¶ 18 The Tenth Circuit explains that to establish a legitimate claim of entitlement, the complaining party must "demonstrate that a set of conditions exist under state and local law, 'the fulfillment of which would give rise to a legitimate expectation' that the City Council would approve" the plaintiff's request. *Hyde Park,* 226 F.3d at 1210 (quoting *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d 1111, 1116 (10th Cir. 1991)). The relevant analysis revolves around "whether there is discretion in the defendants to deny [a permit or an action requested] by the plaintiffs." *Id.* (quotations and citation omitted). If there is considerable discretion, one is not likely to have a legitimate claim of entitlement. *See id.* On the other hand, if the City has little discretion to deny a permit or request, one would be more likely to have a legitimate claim of entitlement. *See id.* Under this standard, Plaintiffs do not have a legitimate claim of entitlement to prepay water impact fees.

¶ 19 Plaintiffs argue that they had a legitimate claim of entitlement to the water impact fee permits because the City was obligated to honor their payments and issue them water impact fee permits. In other words, they assert that the City had no discretionary authority to deny them the permits and that they therefore had a protected property interest in them.[11] However, contrary to Plaintiffs' position, a water impact fee is not a "permit" that they are entitled to obtain. Instead, a water impact fee is a fee imposed as a prerequisite to obtaining a

---

9. Plaintiffs also argue that there were disputed issues of law, and ask this court to apply the so-called "complexity analysis" from *Kennedy v. Silas Mason Co.,* 334 U.S. 249, 256–57, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948), to the facts of this case. However, this argument was not presented below and therefore will not be considered on appeal. *See State v. Richins,* 2004 UT App 36, ¶ 8, 86 P.3d 759.

10. In their brief, Plaintiffs state that they have a protected property interest in "the water impact fees on the one hand, or, in the alternative, in the

proper handling of [their] funds." The "proper handling claim" was not argued below, and therefore will not be considered on appeal. *See Richins,* 2004 UT App 36 at ¶ 8, 86 P.3d 759.

11. The City argues that we should not address this argument because Plaintiffs did not raise the discretionary authority argument below. However, this is merely an extension of the legitimate expectation argument, which Plaintiffs briefed to the trial court.

building permit. *See* Utah Code Ann. § 11–36–102(7)(a). More specifically, it is a charge "levied by local governments against *new development* in order to generate revenue for capital funding necessitated by the new development." *Salt Lake County v. Board of Educ. of Granite Sch. Dist.,* 808 P.2d 1056, 1058 (Utah 1991) (emphasis added) (quotations and citation omitted). One of the primary purposes of impact fees is to "regulate new growth and development and provide for adequate public facilities and services." *Id.* at 1058–59. Plaintiffs' argument that they are entitled to pay impact fees at a reduced rate prior to having any recognized development projects or pending building permit applications circumvents the City's ability to manage new growth and development and adequately provide for services needed as a result of that growth.[12]

¶ 20 Also, Plaintiffs could not have had a legitimate claim of entitlement to the lower impact fee because they did not meet the City's criteria for eligibility. At the December 11 hearing, the City made it clear that developers could pay the impact fee at the $2284 rate if the developers provided building permits to the City by December 26, 2002. Neither Mr. Heideman nor Mr. Gardner complied with that requirement. Therefore, they were not entitled to pay the impact fees at the prior rate.

¶ 21 Plaintiffs argue that the "retroactive application of [the] condition precedent to obtaining impact fees at the lower price during the extension period" was invalid, yet they offer no legal authority in support of that position. In contrast, we find convincing the City's position that it was entitled to clarify the Ordinance without implicating due process concerns. *See, e.g., Foil v. Ballinger,* 601 P.2d 144, 151 (Utah 1979) (finding no error in retroactive application of a law "where the later statute or amendment deals only with clarification or amplification as to how the law should have been understood prior to its enactment." (quotations and citation omitted)).

¶ 22 Even if a water impact fee were a permit, as Plaintiffs suggest, they would not have been automatically entitled to receive one. As the cases Plaintiffs cite to in their brief make clear, those seeking land-use permits do not have a protected property interest in permit approval. *See Hyde Park Co. v. Santa Fe City Council,* 226 F.3d 1207, 1212–13 (10th Cir.2000) (finding no property interest in approval of proposed plat); *Patterson v. American Fork City,* 2003 UT 7, ¶ 24, 67 P.3d 466 (holding that land developers do "not typically have a claim of entitlement to a favorable [land-use] decision"). Plaintiffs distinguish their case by noting that, in contrast to building or zoning permit cases, there is no application requirement for water impact fees. However, the fact that there is no application process hurts, not helps, Plaintiffs' position. *See Hyde Park,* 226 F.3d at 1212–13 ("Because the ordinances as written contain no standards governing the City Council's exercise of discretion, the ordinances simply do not impose 'significant substantive restrictions' on the City Council's power of review." (citation omitted)).

¶ 23 A legitimate claim of entitlement springs from "existing rules and understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits." *Id.* at 1210. As acknowledged in Plaintiffs' brief, "The Impact Fees Act[, *see* Utah Code Ann. §§ 11–36–101, to –402 (2003),] establishes no guidelines about when parties are eligible to purchase impact fees, what parties are eligible to purchase impact fees, etc." Therefore, there are no rules or guidelines that would have secured Plaintiffs a certain benefit at the time they tendered payment to the City. *See Hyde,* 226 F.3d at 1212–13. In sum, Plaintiffs fail to establish that they had a legitimate claim of entitlement to prepay the water impact fees. As a result, several of their remaining claims necessarily fail.[13]

---

12. The Ordinance also specifically states that the impact fees "should be charged to all *new* connections to the City's culinary water system." *See* Washington City, Utah, Ordinance 2002–13 (Oct. 23, 200), and by their own admission, neither Mr. Heideman nor Mr. Gardner had any development projects ready for connection to the City's water system.

13. Without a protected property interest, Plaintiffs' Article I Section 22, takings claim fails. *See*

## VI.  Contractual Relationship

¶ 24 Plaintiffs argue that the City entered into a contract with them by accepting payment for water impact fee permits.  Specifically, Plaintiffs assert that when they tendered payment to the City for the impact fees, an offer occurred, and when the City's front office staff accepted the payments and provided a receipt, an acceptance occurred, thereby creating an implied-in-fact contract.[14]

▪ ¶ 25 An express or implied-in-fact contract results when "there is a manifestation of mutual assent, by words or actions or both, which reasonably are interpretable as indicating an intention to make a bargain with certain terms or terms which reasonably may be made certain." *Rapp v. Salt Lake City*, 527 P.2d 651, 654 (Utah 1974) (quotations and citation omitted).  We conclude there was no contract between the parties in this matter because there is no evidence that the necessary elements of a contract were present.  There was no offer to enter into a contract, no acceptance from anyone qualified to enter into contracts for the City, and no communication that would indicate any type of meeting of the minds.  *See id.; see also Trevino & Gonzalez Co. v. R.F. Muller Co.*, 949 S.W.2d 39, 42 (Tex.App.1997) ("The application for an issuance of a building permit does not constitute a voluntary agreement between the parties to enter into binding contract.").

¶ 26 There is also no evidence that the City voted on a contract with Plaintiffs or had one signed by the city recorder as required by Utah Code sections 10-3-506 and 10-6-138.  *See* Utah Code Ann. §§ 10-3-506, 10-6-138 (2003); *see also Patterson*, 2003 UT 7 at ¶ 13, 67 P.3d 466 (finding no binding contract with city because city council never voted on or approved a binding agreement); *Rapp*, 527 P.2d at 654 (requiring statutory formalities "[p]articularly in the case of public contracts").  *But see Canfield v. Layton City*, 2005 UT 60, ¶ 17, 122 P.3d 622 (observing the possibility of an implied employment contract with a municipality based on " 'the conduct of the parties, announced *personnel policies,* practices of that particular trade or industry, or other circumstances' " (quoting *Berube v. Fashion Ctr., Ltd.*, 771 P.2d 1033, 1044 (Utah 1989))).

▪ ¶ 27 Additionally, Plaintiffs' argument offends public policy.  As the Colorado Court of Appeals held, if the issuance of a permit, or, as is the case here, the acceptance of a fee were to create a "binding obligation . . . the City's ability to protect the health, safety, and welfare of the public would be seriously hampered." *Patzer v. City of Loveland*, 80 P.3d 908, 911 (Colo.Ct.App.2003).  As a result, we do not disturb the trial court's conclusion that no contract existed between the parties.[15]

*Bagford v. Ephraim City*, 904 P.2d 1095, 1097 (Utah 1995) ("To recover under [A]rticle I, [S]ection 22, a claimant must possess a protectable interest in property that is taken or damaged for a public use.").  The same is true for their conversion claim.  *See Fibro Trust, Inc. v. Brahman Fin., Inc.*, 1999 UT 13, ¶ 20, 974 P.2d 288 (requiring current possessory right to a chattel as a prerequisite to a conversion claim).

It is also worth noting that in their motion for summary judgment, Plaintiffs claimed conversion because they had a protected property interest in the "water impact permits at the time such permits were applied for," and when the City failed to give them any permits, it interfered with their existing or potential economic relations.  On appeal, however, they claim that they had a protected interest in the money paid for the permits.  As previously noted, because Plaintiffs did not raise this second argument before the trial court, we will not consider it for the first time on appeal.  *See Richins*, 2004 UT App 36 at ¶ 8, 86 P.3d 759.

**14.** In their reply brief, Plaintiffs state that an offer occurred when the city council voted to extend the deadline to pay water impact fees *or* when they tendered the money to the City.  Because they are raising the argument that the City made an offer to them for the first time in their reply brief, this court will not consider it.  *See Romrell v. Zions First Nat'l Bank, N.A.*, 611 P.2d 392, 395 (Utah 1980) ("As a general rule, an issue raised in a reply brief will not be considered on appeal.").  However, even if this court did consider the argument raised in Plaintiffs' reply brief, it would fail because there were clearly no certain terms in the City's alleged offer.  *See Rapp v. Salt Lake City*, 527 P.2d 651, 654 (Utah 1974).

**15.** Because there was no contract, there was necessarily no breach of the covenant of good faith and fair dealing.  *See Buckner v. Kennard*, 2004 UT 78, ¶ 31, 99 P.3d 842 ("Any claim for breach of contract must be predicated on the existence of an express or implied contract, in this case a contract for employment.").

## CONCLUSION

¶ 28 Plaintiffs fail to identify a protected property interest on appeal, they have not provided any evidence indicating that there was a contract between the parties, and their notice of claim was facially insufficient. Accordingly, we affirm the trial court's grant of summary judgment.

¶ 29 WE CONCUR: JUDITH M. BILLINGS and GREGORY K. ORME, Judges.