2010 UT App 56

**Paul A. WILKINSON, Donna Wilkinson, Eldon D. East, and Sherene East, Plaintiffs and Appellants,**

v.

**WASHINGTON CITY, Defendant and Appellee.**

No. 20090114–CA.

Court of Appeals of Utah.

March 11, 2010.

Justin D. Heideman and Michael A. Parkes, Provo, for Appellants.

Bryan J. Pattison and Jeffrey N. Starkey, St. George; and Thomas J. Burns, Salt Lake City, for Appellee.

Before Judges VOROS, BENCH, and GREENWOOD.[1]

## OPINION

GREENWOOD, Senior Judge:

¶ 1 Plaintiffs Paul A. Wilkinson, Donna Wilkinson, Eldon D. East, and Sherene East (collectively, the Wilkinsons) appeal the district court's grant of summary judgment in favor of Defendant Washington City (the City), determining that the City was immune from liability for damage to the Wilkinsons' properties because the City's action in increasing water pressure constituted a firefighting activity.[2] *See* Utah Code Ann. § 63–30–10(18)(b) (1997). We affirm.

## BACKGROUND

¶ 2 At the time the facts leading to the present claims arose, the Wilkinsons lived in the Majestic View subdivision, located in the City. According to state regulation applicable at the time, the City was required to ensure that "a minimum pressure of 20 psi is maintained at all times and at all points in the distribution system" for fire protection purposes. Utah Admin. Code R309–550–5(5)(e) (2004). Surging population at the time and hilly terrain within the City prevented adequate water pressure to some communities, including areas of the Majestic View subdivision, especially during the peak hours of use. The City stated that in order to remedy the inadequate water pressure, it decided "to

engineer, construct, and finally to bring into service a new distribution/transmission line [ (the Southern Transmission line) ] for the purpose of providing sufficient fire flows and fire protection to the higher elevations in [the] Majestic View [subdivision]." Doing so increased the water pressure to many homes within the City, including the Wilkinsons' homes.

¶ 3 "As a direct result of the City's increase of the water pressure, [the Wilkinsons'] homes and personal property were significantly damaged." Accordingly, in November 2003, the Wilkinsons filed a notice of claim against the City, and in March 2004 they filed suit, "alleging a laundry list of federal constitutional and civil rights violations ... as well as certain state constitutional and tort claims." After the federal claims were dismissed in the United States District Court, the case was remanded to state court. The City moved for and was granted partial summary judgment on the Wilkinsons' state constitutional claims. The City then filed two concurrent motions for summary judgment on the Wilkinsons' remaining claims. Respectively, these motions addressed the Wilkinsons' inability to prove causation and the City's governmental immunity from suit. The district court did not address the causation argument, instead resolving the issue on immunity grounds. In doing so, the district court struck the only affidavit submitted by the Wilkinsons in opposition to the summary judgment motion—an affidavit of the Wilkinsons' expert John Daniel Thorpe (the Thorpe affidavit)—on the grounds that it "is insufficient under Rule 56(e) [of the Utah Rules of Civil Procedure] standards and otherwise contradicts Mr. Thorpe's prior sworn deposi-

---

1. The Honorable Russell W. Bench and the Honorable Pamela T. Greenwood, Senior Judges, sat by special assignment pursuant to Utah Code section 78A–3–103(2) (2008) and rule 11–201(6) of the Utah Rules of Judicial Administration.

2. Of the Wilkinsons' two issues raised on appeal, only one directly concerns the City's liability. The second issue raised involves the district court's denial of Steve and Allison Woods's motion for joinder in the Wilkinsons' suit. There are several problems with the Wilkinsons' attempt to raise this issue. Most notably, there

was a prior appeal from that order, resulting in dismissal for failure to timely file the notice of appeal. *See Woods v. Washington City*, 2007 UT App 398U (mem.) (per curiam). Regardless, we do not separately address this issue because we determine that failure to allow joinder of the Woodses, even if erroneous, was harmless. More specifically, because we determine that the City is immune from suit by the Wilkinsons, we conclude that the City would likewise be immune from suit by the Woodses, thus making the joinder issue moot.

tion testimony."[3] The district court granted the City's motion for summary judgment, concluding that

> it is undisputed that the City's reason for increasing the water pressure in the Majestic View subdivision was for the purpose of providing sufficient [water] flow at fire hydrants for fire protection purposes. This action constitutes a fire fighting activity and therefore the City is immune from suit under section 63–30–10(18)(b) of the Utah Governmental Immunity Act (the Act).

The Wilkinsons now appeal.

## ISSUE AND STANDARD OF REVIEW

¶ 4 The Wilkinsons argue that the district court erred in granting summary judgment in favor of the City. Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c).

> When reviewing a summary judgment on appeal, we accord no deference to the trial court's legal conclusions and therefore review them for correctness. Whether the district court accurately interpreted [the Act] is a legal question. We therefore construe the Act and then apply it to the facts of this case, viewing the facts and any reasonable inferences therefrom in the light most favorable to the nonmoving party, the [Wilkinsons].

*See Grappendorf v. Pleasant Grove City,* 2007 UT 84, ¶ 5, 173 P.3d 166 (citations omitted).

**3.** Mr. Thorpe was previously deposed by the City and parts of his deposition testimony were presented in support of the City's motion for summary judgment.

**4.** The Wilkinsons also argue that Isom's deposition testimony "in a sister case" creates a genuine issue of material fact precluding the present summary judgment. Obviously, however, Isom's deposition testimony "in a sister case" was not properly before the district court when resolving the summary judgment motion at issue in this case, and we are thus unable to consider it on appeal. *See Heideman v. Washington City,* 2007 UT App 11, ¶ 16, 155 P.3d 900 ("[I]n the context

## ANALYSIS

¶ 5 The Wilkinsons argue that "the City's true purpose in increasing the water pressure is, at the very least, a genuine and disputed issue of material fact" precluding summary judgment. Specifically, the Wilkinsons rely on two sources that purportedly evidence a genuine material factual dispute: (1) the Thorpe affidavit, "in which [Thorpe] represented that the City's decision to increase water pressure was made primarily in order to increase water pressure to the City's subdivisions"; and (2) deposition testimony of Dwayne Isom, the City's fire chief at the time these claims arose, wherein, according to the Wilkinsons' brief, Isom said that he "could not recall any problems with the City's fire hydrants' flow capacity that would have motivated the City's actions in increasing the water pressure."[4] As stated above, we review for correctness the district court's conclusion that there are no disputed facts material to the issue.[5] *See id.*

¶ 6 Although we recognize that "[a] disputed issue of fact can be created by one sworn statement under oath disputing the moving party's allegations," *Creekview Apartments. v. State Farm Ins. Co.,* 771 P.2d 693, 695 (Utah Ct.App.1989), neither of the statements cited by the Wilkinsons created a factual dispute, because neither was properly before the district court. The Wilkinsons acknowledge that the district court struck the Thorpe affidavit and thus did not consider it in resolving the City's summary judgment motion. However, the Wilkinsons do not appeal the district court's decision to strike the Thorpe affidavit, asserting simply instead that "[b]ecause [they] now appeal the

of summary judgment, we are confined to the disputed facts that were properly before the [district] court.").

**5.** We note that the portion of the Wilkinsons' brief asserting that there were disputed material issues of fact contains no "citations to the ... parts of the record relied on." *See* Utah R.App. P. 24(a)(9); *Valcarce v. Fitzgerald,* 961 P.2d 305, 313 (Utah 1998) ("It is well established that an appellate court will decline to consider an argument that a party has failed to adequately brief.").

[district c]ourt's Order, Mr. Thorpe's Affidavit is material and a piece of evidence whose admissibility is in dispute." Despite the Wilkinsons' assertion, we do not consider the Thorpe affidavit on appeal because the Wilkinsons fail to challenge the district court's ruling striking it. *See Heideman v. Washington City*, 2007 UT App 11, ¶ 10 n. 7, 155 P.3d 900.

¶ 7 Similarly, there is nothing in the record before us establishing that the Isom deposition was before the district court or that the district court considered it in resolving the summary judgment motion. It is not even clear when or if Isom was deposed in this proceeding or if the purported testimony occurred. Moreover, the Wilkinsons fail to direct us to any such record evidence. Accordingly, we conclude that the Isom deposition was not properly before the district court and do not consider it on appeal.[6] *See id.* ¶ 16 ("[I]n the context of summary judgment, we are confined to the disputed facts that were properly before the [district] court.").

 ¶ 8 As the Utah Supreme Court has made clear, facts asserted in support of a motion for summary judgment remain undisputed "[a]bsent a direct counter." *Johnson v. Hermes Assocs.*, 2005 UT 82, ¶ 24, 128 P.3d 1151. In light of the Wilkinsons' failure to counter the City's factual contentions presented in support of its summary judgment motion, the following is the only undisputed material fact necessary for resolution of this appeal: "[T]he City made the decision to engineer, construct, and finally to bring into a service a new distribution/transmission line (the 'Southern Transmission' line) for the purpose of providing sufficient [water] flows and fire protection to the higher elevations in [the] Majestic View [subdivision]."[7] We therefore proceed based on the proposition that the purpose of the City's decision in increasing water pressure was to provide adequate water pressure to fire hydrants. Accordingly, we now analyze whether the district court correctly concluded that providing sufficient water pressure to fire hydrants constitutes a fire-fighting activity under the Act such that the City is immune from suit for damages allegedly resulting therefrom.

¶ 9 Utah courts have interpreted the Act as providing that

> [a] government entity is immune from suit ... if it can establish that (1) the activity giving rise to the plaintiff's claim served a governmental function; (2) governmental immunity is not waived for the particular activity; or (3) if immunity is waived for a particular activity, the activity falls under an applicable exception to that waiver.

*Grappendorf v. Pleasant Grove City*, 2007 UT 84, ¶ 6, 173 P.3d 166. The first two prongs were not contested in this case,[8] and

---

6. After the Wilkinsons urged the district court to consider the Isom deposition as precluding summary judgment, the district court responded as follows: "Counsel, my concern about that is the record in this case is not the record in the other one. And judicial notice will only go so far." It thus appears likely that the purported statement from Isom's deposition testimony was also from "a sister case."

7. Prior to granting the summary judgment motion at issue in this appeal, the district court granted partial summary judgment to the City with respect to other claims raised by the Wilkinsons. In granting partial summary judgment, the district court included the following as an undisputed fact: "In early August 2003, to remedy a lack of water pressure to homes in [the] City's higher elevations, the City increased the water pressure in ... the Southern Transmission Line." The Wilkinsons argue that "the district court's conclusion that the City's actions fell under the fire-fighting exclusion [with respect to the summary judgment grant at issue in this appeal]

is precluded by [that] prior, unchanged finding." However, this argument is unavailing because the district court did not "find" this fact, stating simply that that "fact[was] undisputed and considered in the light most favorable to the [Wilkinsons] *for purposes of this [partial] summary judgment motion only.*" Therefore, this statement does not preclude the district court's conclusion that the City's actions constituted fire-fighting activities for purposes of the summary judgment in this appeal. Indeed, there is no authority cited by the Wilkinsons and no reason we can perceive precluding achievement of dual public purposes as being inconsistent with governmental immunity.

8. We agree that the first two prongs are not at issue in this appeal. First, any actions taken to ensure adequate water pressure to City residents, whether for fire prevention or for culinary purposes, undoubtedly "serve[] a governmental function." *See Grappendorf v. Pleasant Grove City*, 2007 UT 84, ¶ 7, 173 P.3d 166. Second, the

we thus address only whether the City's actions qualified as an exception to the waiver of governmental immunity for negligent acts or omissions. Specifically, we must determine whether the City's actions in increasing the water pressure constituted "activities of ... fighting fire." Utah Code Ann. § 63–30–10(18)(b) (1997).

¶ 10 In construing the Act, we apply traditional statutory construction rules and attempt first and foremost "to give effect to the legislature's intent." *Lyon v. Burton,* 2000 UT 19, ¶ 17, 5 P.3d 616 (internal quotation marks omitted). Generally speaking, legislative intent is best determined by looking at the plain language of the statute at issue, and "where the statutory language is plain and unambiguous, we do not look beyond the language's plain meaning to divine legislative intent." *Id.* (internal quotation marks omitted). "In conducting a textual analysis, we consider the literal meaning of each term and avoid interpretations that will render portions of a statute superfluous or inoperative." *Grappendorf,* 2007 UT 84, ¶ 9, 173 P.3d 166 (internal quotation marks omitted).

¶ 11 The statutory provision at issue states that governmental immunity is not waived where "the injury [giving rise to the claim] arises out of, in connection with, or results from ... *the activities of ... fighting fire.*" Utah Code Ann. § 63–30–10(18)(b) (emphasis added). The definition of "activity" includes "an organizational unit for performing a specific function" as well as the "function or duties" of such a unit. *Webster's Ninth New Collegiate Dictionary* 54 (1986). "Fight" is defined as "to strive to overcome," "to put forth a determined effort," "to contend against," and "to attempt to prevent the success or effectiveness of." *Id.* at 461. From these definitions it appears that providing adequate water supply to fire hydrants may well be included in fire-fighting activities, because doing so is a "function or dut[y]" of an "organizational unit for per-

forming [the] specific function" of "striv[ing] to overcome" fire and damage caused thereby.

¶ 12 The Wilkinsons, however, argue that fire-fighting activities should be narrowly interpreted as a matter of policy, to encompass only actively combating a fire, not activities engaged in where there is no present emergency or imminent danger. In addition, the Wilkinsons rely on the Utah Supreme Court's decision in *Lyon v. Burton,* 2000 UT 19, 5 P.3d 616. In *Lyon,* Chief Burton of the Weber Fire District heard a fire report on his radio while he was driving his personal car. *See id.* ¶ 4. He activated the emergency light and siren installed in his car and proceeded towards the location of the fire. *See id.* In doing so, he entered an intersection against a red light and collided with the plaintiffs. *See id.* ¶ 5. The plaintiffs sustained serious injuries and sued Chief Burton and the Water District. *See id.* ¶¶ 5–6. Although the defendants claimed immunity under the Act's fire-fighting exception, the case proceeded to trial and a verdict was rendered. *See id.* ¶¶ 1, 6–8. On appeal, the supreme court first addressed "whether driving an emergency vehicle to a fire is a 'governmental function,'" and concluded in the affirmative, also concluding that defendants were "therefore presumptively cloaked with immunity." *See id.* ¶ 14. The court noted that under section 63–30–10 of the Act, there is a "broad waiver of governmental immunity for negligent acts of an employee committed in the course and scope of employment." *Id.* ¶ 15. The court then considered the application of any exceptions to the general waiver under either of two subsections to section 63–30–10:(15), excepting "operation of an emergency vehicle," and (18)(b), excepting "fighting fire ...," from the waiver of immunity. *See id.* ¶ 16. The court stated that the exceptions were alternative and that the applicable rule is "that a statute dealing specifically with a particular issue prevails over a more general statute ... deal[ing] with the

---

Act waives immunity "for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment." Utah Code Ann. § 63–30–10 (1997). Because this is an appeal from a grant of summary judgment, "we draw all factual inferences in

favor of the [Wilkinsons and] assume for purposes of this appeal that [the City] was negligent." *Grappendorf,* 2007 UT 84, ¶ 7, 173 P.3d 166 (referring to section 63–30–10 of the Act). We note, however, that the City does not concede negligence in this matter.

same issue." *Id.* ¶¶ 16–17. The court then concluded that the emergency vehicle provision had more specific applicability and therefore governed. *See id.* ¶ 18. The *Lyon* decision did not address the fire-fighting activity exception to immunity and consequently is neither applicable nor helpful in this case.

¶ 13 The City, in addition to arguing that *Lyon* is not controlling precedent, contends that fire-fighting activities should be interpreted to include the activities in this case because water is necessary to effectively combat fires and providing sufficient water is intended to protect the City's citizens from fire. Specifically, the City posits that "fighting fire is more than holding a hose and wielding an axe at the scene of an inferno; it also includes ensuring there is water in hydrants to make it possible to fight fire." Although there are no Utah cases addressing the specific issue here—whether providing water to fire hydrants to facilitate fire fighting is included in the exception in section 63–30–10(18)(b) of the Act—the City cites cases from other jurisdictions in support of its position, which cases have defined fire-fighting and the activities and processes related thereto in connection with the government. The case of *Zacharie v. City of San Antonio*, 952 S.W.2d 56 (Tex.App.1997), is particularly helpful. In that case, the Texas court was presented with a claim for damage to private property resulting from water pressure issues and was required to interpret its governmental immunity statute. *See id.* at 57. The provision at issue in *Zacharie* is similar to Utah's and provides that governmental immunity is waived in certain circumstances, including negligence. *See id.* at 59 (citing Tex. Civ. Prac. & Rem.Code Ann. § 101.021 (Vernon 1997)). Similar to the statute at issue in the present appeal, the Texas statute includes an exception to that general waiver of immunity, for "a claim arising ... from the failure to provide or the method of providing ... fire protection." Tex. Civ. Prac. & Rem.Code Ann. § 101.055(3) (Vernon 1997). In concluding that governmental immunity properly barred the plaintiff's claims, the Texas court stated that "[e]nsuring that an adequate amount of water is available to fire hydrants is necessarily connected to providing fire protection." *Zacharie*, 952 S.W.2d at 59.

¶ 14 We agree with the rational and logical statement made by the *Zacharie* court. Assuring adequate water supply to fire hydrants is an essential part of firefighting. Accordingly, we conclude that the district court correctly determined that the City is immune from suit because its actions in increasing the water pressure to ensure adequate [water] flows at fire hydrants constitutes an activity of firefighting.[9]

## CONCLUSION

¶ 15 The district court did not err in concluding that there were no genuine factual disputes precluding summary judgment. Furthermore, the district court correctly determined that the City is immune from suit because its actions in increasing the water pressure to fire hydrants constituted a firefighting activity. Affirmed.

¶ 16 WE CONCUR: J. FREDERIC VOROS JR., Judge and RUSSELL W. BENCH, Senior Judge.

9. Because we conclude that the City's actions constituted fire-fighting activities we do not address the City's alternative argument that it is immune from suit because it was performing a discretionary function.