2007 UT 84

**Daniel GRAPPENDORF and Heidi Grappendorf, individually and as parents and heirs of Daniel Austin Grappendorf, Phil Thompson, and Jenny Thompson, Plaintiffs and Appellants,**

v.

**PLEASANT GROVE CITY and American Sports International, Ltd., aka American Athletics, Inc., et al., Defendants and Appellee.**

No. 20060461.

Supreme Court of Utah.

Oct. 26, 2007.

Rehearing Denied Nov. 28, 2007.

Edward P. Moriarity, Shandar S. Badaruddin, Bradley L. Booke, Robert D. Strieper, Salt Lake City, for appellants.

Peter Stirba, Gary R. Guelker, Meb W. Anderson, Salt Lake City, for appellee.

PARRISH, Justice:

## INTRODUCTION

¶ 1 This case requires us to construe the natural condition exception to the State of Utah's waiver of governmental immunity. Utah Code Ann. § 63–30–10(11) (1997). The Grappendorfs brought this action against Pleasant Grove City after their young son was killed by a moveable pitching mound that was projected through the air by a violent gust of wind. The district court granted summary judgment to Pleasant Grove, holding that the City was immune from suit because the tragic occurrence was the result of a natural condition on public land. We reverse the summary judgment, holding that atmospheric conditions, like gusts of wind, do not fall under the natural condition exception.

## BACKGROUND

¶ 2 On June 21, 2002, the Grappendorf family attended a softball game at a ballpark owned and operated by Pleasant Grove. The City had purchased a moveable pitching mound for the ballpark to provide a suitable field for both softball and baseball games. (Baseball players pitch from an elevated mound, while softball players pitch from the ground.) On the day of the Grappendorfs' visit to the park, the mound, which was approximately twelve feet by eight feet and weighed several hundred pounds, had been chained through one of its four nylon handles to a chainlink fence by a city employee in order to prevent children from using it as a bike jump. As the family walked together, a "forceful wind gust" lifted the mound, ripping it away from the chained nylon strap. It flew through the air and struck thirteen-year-old Daniel Austin Grappendorf, who died "as the consequence of massive brain injuries ... due to blunt trauma to the head."

¶ 3 Daniel's family filed suit against Pleasant Grove, asserting that the City's negligence directly and proximately caused Daniel's death and plaintiffs' severe emotional distress.[1] Pleasant Grove moved for summary judgment under the Utah Governmental Immunity Act (the "Act"), Utah Code Ann. §§ 63–30–1 to –38 (1997) (repealed 2004),[2] claiming immunity under the natural

---

1. The Grappendorfs filed separate claims against various parties associated with the manufacture of the pitching mound.

2. The Utah Governmental Immunity Act was re-enacted as the Governmental Immunity Act of Utah in Utah Code sections 63–30d–101 to –904 on July 1, 2004. Throughout this opinion, we refer to the former enactment because it was the

condition exception to the waiver of governmental immunity for negligence. *Id.* § 63–30–10(11). The district court granted Pleasant Grove's motion and entered summary judgment in its favor.

¶ 4 The Grappendorfs filed this appeal. They argue that the natural condition exception to the Act's waiver of immunity does not apply when a negligent governmental action creates a danger that precedes the existence of the natural condition. They also argue that the Act violates the open courts clause, the wrongful death cause of action guarantee, and the petitions clause of the Utah Constitution. We have jurisdiction to hear this appeal under Utah Code section 78–2–2(3)(j).

## STANDARD OF REVIEW

¶ 5 Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Crestwood Cove Apts. Bus. Trust v. Turner*, 2007 UT 48, ¶ 10, 164 P.3d 1247. When reviewing a summary judgment on appeal, we accord no deference to the trial court's legal conclusions and therefore review them for correctness. *Blackner v. State Dep't of Transp.*, 2002 UT 44, ¶ 8, 48 P.3d 949. Whether the district court accurately interpreted the Act is a legal question. *Id.* We therefore construe the Act and then apply it to the facts of this case, viewing the facts and any reasonable inferences therefrom in the light most favorable to the nonmoving party, the Grappendorfs. *Johnson v. Hermes Assocs., Ltd.*, 2005 UT 82, ¶ 2, 128 P.3d 1151.

## ANALYSIS

¶ 6 This case turns on Pleasant Grove's claimed immunity from liability under the Utah Governmental Immunity Act.[3] A government entity is immune from suit under the Act if it can establish that (1) the activity giving rise to the plaintiff's claim served a governmental function; (2) governmental immunity is not waived for the partic-

ular activity; or (3) if immunity is waived for a particular activity, the activity falls under an applicable exception to that waiver. *Blackner v. State Dep't of Transp.*, 2002 UT 44, ¶ 10, 48 P.3d 949.

¶ 7 We may briefly dispose of the first two prongs of this analysis, as they are uncontested by the parties. Neither party disputes that Pleasant Grove is a government entity and that the maintenance and operation of a baseball park serves a governmental function. With regard to the second prong, the Act provides that "[i]mmunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment." Utah Code Ann. § 63–30–10 (1997). Because we draw all factual inferences in favor of the Grappendorfs, we assume for purposes of this appeal that Pleasant Grove was negligent.

¶ 8 Resolution of this case, therefore, turns on the third prong of the test. The Act provides a number of exceptions to its waiver of immunity for negligent acts. *See id.* § 63–30–10(1)–(19). The natural condition exception on which Pleasant Grove relies provides that "if the injury arises out of, in connection with, or results from ... any natural condition on publicly owned or controlled lands," governmental immunity remains intact. *Id.* § 63–30–10(11). The necessity for this exception arises because "Utah's vast public lands ... are open to the public for recreational uses [and] present all kinds of hazards arising from their natural conditions.... The State and other governmental entities cannot be expected to [protect citizens against] every ... potentially hazardous condition located on public property." *Stuckman ex rel. Nelson v. Salt Lake City*, 919 P.2d 568, 575 (Utah 1996).

¶ 9 When interpreting a statute, our goal is to give effect to the legislature's intent and purpose. *State v. Ireland*, 2006 UT 82, ¶ 7, 150 P.3d 532. To that end, we begin with the statute's plain language.

---

statute in effect at the time of Daniel's injury. The pertinent language from the two acts, however, is identical.

**3.** Because we ultimately find that Pleasant Grove is not eligible for governmental immunity under the natural condition exception, we need not address the constitutionality of the Act.

*Blackner,* 2002 UT 44, ¶ 12, 48 P.3d 949. In conducting a textual analysis, we consider the literal meaning of each term and "avoid interpretations that will render portions of a statute superfluous or inoperative." *Hall v. State Dep't of Corr.,* 2001 UT 34, ¶ 15, 24 P.3d 958. The plain language of any specific provision should be read in harmony with other provisions in the same statute. *Lyon v. Burton,* 2000 UT 19, ¶ 17, 5 P.3d 616; *Roberts v. Erickson,* 851 P.2d 643, 644 (Utah 1993) (per curiam).

 ¶ 10 Having established this interpretive rubric, we consider the plain language of the statute, which provides that government entities are immune from suit for negligent actions for any injury that arises from or in connection with or results from "any natural condition on publicly owned or controlled lands." Utah Code Ann. § 63–30–10(11). A careful analysis of the wording of this exception elucidates its limits. "Natural" is defined as "[p]resent in or produced by nature." *Webster's II New College Dictionary* 729 (1995). The word natural modifies "condition," which is generally understood as a "[m]ode or state of being." *Id.* at 234. Natural condition is then limited by the prepositional phrase "on publicly owned or controlled lands." In this context, "on" is "[u]sed to indicate ... [a] [p]osition above and in contact with" or "[c]ontact with a surface, regardless of position." *Id.* at 764. From these definitions, it follows that a natural condition "on" the land must be topographical in nature, not merely atmospheric. The limiting prepositional phrase requires that the natural condition be in physical contact with the land, supported by the surface of the land, or part of the land. An atmospheric condition, like wind, heat from the sun, or fog, is transient by nature and therefore does not exist on the land as required by the plain language of the statute. Consequently, the gust of wind that arguably began the chain of events leading to Daniel Grappendorf's tragic death does not fall under the natural condition exception.

¶ 11 Considered broadly, natural conditions include laws of physics, such as gravity, that necessarily contribute to any accident or occurrence. Were we to ignore the statute's limitation that the natural condition be on the land, the natural condition exception would necessarily swallow the Act's waiver of immunity for negligence. *Cf. Johnson v. State Dep't of Transp.,* 2006 UT 15, ¶ 19, 133 P.3d 402. Giving real meaning to the statutory requirement that the exception cover only those natural conditions "on publicly owned or controlled lands" allows us to avoid an interpretation that nullifies the Act's waiver of immunity and ensures that other exceptions to the waiver, which deal more explicitly with natural occurrences, are not rendered mere surplusage.

¶ 12 Section 63–30–10(11), which contains the natural conditions exception, also provides governmental immunity for conditions "existing in connection with an abandoned mine or mining operation, or any activity authorized by the School and Institutional Trust Lands Administration or the Division of Forestry, Fire and State Lands." Utah Code Ann. § 63–30–10(11). Thus, the whole of subsection (11) is concerned with the conditions and activities that occur on the surface of land, be they naturally occurring conditions, man-made mines, or governmental services.

¶ 13 In contrast, other subsections of the Act provide immunity for governmental activities relating to atmospheric conditions. Subsection (12) provides immunity for "research or implementation of cloud management or seeding for the clearing of fog"; subsection (13) provides immunity for the "management of flood waters, earthquakes, or natural disasters"; and subsection (14) provides immunity for activities relating to "the construction, repair, or operation of flood or storm systems." *Id.* § 63–30–10(12)–(14). The requirement that our construction of the statute imbue these subsections with independent meaning requires us to avoid an overly broad interpretation of the natural condition exception. Ignoring the limiting phrase "on publicly owned or controlled lands" would require that we include atmospheric conditions within the natural condition exception, thereby rendering portions of subsections (12), (13), and (14) superfluous.

¶ 14 The textual analysis that we elucidate here is also consistent with previous decisions applying the natural condition exception, all of which applied the exception to conditions actually on the land. For example, in *Blackner*, a Department of Transportation officer stopped traffic in a known avalanche area after an avalanche had partially buried the road in Little Cottonwood Canyon. 2002 UT 44, ¶¶ 2–5, 48 P.3d 949. While traffic was stopped, a second avalanche occurred and seriously injured Blackner. *Id.* ¶ 6. We held that the avalanche and the snow pack from which the avalanche originated were natural conditions on public land and that the State was therefore immune from suits arising from injuries caused by the second avalanche. *Id.* ¶ 14. The snow that caused the injury was a natural condition in physical contact with the land. Similarly, in *Stuckman ex rel. Nelson*, we recognized that a river was a natural condition, but ultimately held that the city was not immune from suit because it undertook a duty to protect citizens from the river by building a fence. 919 P.2d at 574–75. A river falls within the natural condition exception because it flows directly above and in contact with the land. In *Apffel v. Huddleston*, a federal district court found public university officials immune from a wrongful death action that arose when a student fell to his death after climbing cliffs at a college party. 50 F.Supp.2d 1129, 1130–31, 1140–41 & n. 2 (D.Utah 1999). As an alternate basis for its holding, the court noted that the cliffs were a natural condition on the land and therefore immunity arose under the natural condition exception. *Id.* at 1141.

## CONCLUSION

¶ 15 We hold that Pleasant Grove is not immune from suit for the death of Daniel Grappendorf under the natural condition exception of the Utah Governmental Immunity Act found in Utah Code section 63–30–10(11). Atmospheric conditions, like the gust of wind that allegedly led to Daniel's fatal injury, do not constitute natural conditions on the land. We consequently reverse the district court's summary judgment in favor of Pleasant Grove and remand this case for further proceedings consistent with this opinion.

¶ 16 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.