2008 UT 39

**Thomas PECK, aka Thomas Joseph Peck, Plaintiff and Appellee,**

v.

**STATE of Utah and the Utah Highway Patrol, Defendants and Appellants.**

**No. 20070117.**

Supreme Court of Utah.

July 1, 2008.

---

Bart J. Johnsen, Chandler P. Thompson, Park City, for plaintiff.

Mark L. Shurtleff, Att'y Gen., Peggy E. Stone, Asst. Att'y Gen., Salt Lake City, for defendants.

PARRISH, Justice:

## INTRODUCTION

¶ 1 This case requires us to determine whether the Utah Governmental Immunity Act bars Thomas Peck's negligence suit against the State of Utah and the Utah Highway Patrol ("UHP"). Peck alleges that a UHP trooper negligently allowed him to fall on his face while the trooper was physically restraining him. The incident occurred after Peck was arrested and handcuffed, but before he was placed in a police cruiser to be transported to jail. We hold that Peck's claim is barred because there is a causal connection between his injury and his incarceration in a place of legal confinement such that his injury arose out of his incarceration. Thus, his claim falls within the plain language of Utah Code section 63–30–10(10) (1997) (the "incarceration exception"),[1] which retains governmental immunity for negligence suits in which "the injury arises out of,

---

1. Because there are multiple versions of this statute, we refer to the version in effect at the time of Peck's injury. *See Grappendorf v. Pleasant Grove City*, 2007 UT 84, ¶ 3 n. 2, 173 P.3d 166. On July 1, 2004, the legislature replaced the Utah Governmental Immunity Act, Utah Code Ann. §§ 63–30–1 to –38 (1997), with the Governmental Immunity Act of Utah. Utah Code Ann. §§ 63–30d–101 to –904 (2004). Under the current version of the Act, the incarceration exception is found at Utah Code section 63–30d–301(5)(j). Although some wording differs between the two versions of the statute, the operative language is virtually identical. Thus, case law interpreting section 63–30–10(10) will likely apply to section 63–30d–310(5)(j). *See Johnson v. State Dep't of Transp.*, 2006 UT 15, ¶ 12 n. 6, 133 P.3d 402.

in connection with, or results from ... the incarceration of any person in any state prison, county or city jail, or other place of legal confinement."

## FACTS

¶ 2 On appeal from a motion to dismiss, "we review the facts only as they are alleged in the complaint."[2] We accept the factual allegations as true and draw all reasonable inferences from those facts in a light most favorable to the plaintiff.[3] We recite the facts accordingly.

¶ 3 On September 17, 2002, two UHP troopers arrested Peck for drunk driving. They approached him in the parking lot of a gas station, placed him in handcuffs, and asked him to stand in front of the police cruiser while they cleared a space in the back seat in order to transport him to the county jail. Peck stood in front of the cruiser, but refused to comply with the troopers' repeated requests that he turn and face the vehicle. Instead, he shouted at the troopers. In response, one of the troopers attempted to physically restrain Peck by forcing him to the ground. Due to a recent rainstorm, the parking lot was wet and slippery. The trooper slipped and lost physical control of Peck as he was forcing him to the ground. Because Peck's hands were cuffed behind his back, he could not break his fall and landed face first on the ground, resulting in trauma to his head and injuries to his face.

¶ 4 Peck filed a complaint alleging that his injuries were caused by the trooper's negligence in allowing him to fall on his face. In response, the State filed a motion to dismiss based on governmental immunity. The State argued that Peck's injuries are covered by the incarceration exception to the statutory waiver of governmental immunity because

his injuries arose out of incarceration in a place of legal confinement.

¶ 5 The district court denied the State's motion, and the State filed a motion for judgment on the pleadings based on the same theory. The district court issued a written decision denying this motion as well because Peck's injuries did not occur in a "state prison, county or city jail, or other place of legal confinement" within the meaning of the incarceration exception. The district court reasoned that a generic term following specific terms should be interpreted "to embrace only objects similar in nature to those objects enumerated by the preceding specific words."[4] Accordingly, the district court held that the incarceration exception covers only those injuries that occur within "physical facilities owned and controlled by a state or municipal government." Because Peck was never confined in a facility owned or controlled by the State, the district court concluded that he was never incarcerated in a "place of legal confinement." Consequently, his claim was not barred by governmental immunity.

¶ 6 We granted the State's petition for interlocutory appeal under rule 5 of the Utah Rules of Appellate Procedure. We have jurisdiction to hear this appeal under Utah Code section 78A–3–102(3)(j) (Supp. 2008).[5] We reverse and remand.

## STANDARD OF REVIEW

■ ¶ 7 We review the district court's denial of a motion for judgment on the pleadings for correctness, granting no deference to the district court's ruling.[6] Additionally, determining the scope of an exception to the waiver of governmental immunity is a question of statutory interpretation that we also review for correctness.[7]

---

2. *Hall v. State Dep't of Corr.*, 2001 UT 34, ¶ 2, 24 P.3d 958.

3. *Id.*

4. *See State v. Ireland*, 2006 UT 17, ¶ 13, 133 P.3d 396 (internal quotation marks omitted).

5. The legislature renumbered Title 78 during the 2008 General Legislative Session. Because the

language is identical, we cite to the newly numbered statute.

6. *See Mountain Am. Credit Union v. McClellan*, 854 P.2d 590, 591 (Utah 1993).

7. *See Blackner v. Dep't of Transp.*, 2002 UT 44, ¶ 8, 48 P.3d 949; *Hall v. State Dep't of Corr.*, 2001 UT 34, ¶ 11, 24 P.3d 958.

## ANALYSIS

¶ 8 We apply a three-part test to determine whether a governmental entity is immune from suit under the Utah Governmental Immunity Act. The test "assesses (1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver."[8] In this case, there is no dispute that the UHP troopers were undertaking a governmental function for which the government has waived immunity. There is also no dispute that Peck was "incarcerated" at the time of the injury. He was arrested, handcuffed, and told to stand in front of the police cruiser. Clearly, he was "under the control of the State"[9] and unable to "be released without some kind of permission."[10]

¶ 9 Thus, the only issue before us is the scope of governmental immunity retained by the incarceration exception, which preserves immunity for any injury that "arises out of, in connection with, or results from ... the incarceration of any person in any state prison, county or city jail, or other place of legal confinement."[11]

¶ 10 The first step in any statutory interpretation is to examine the plain meaning of the statute. "[O]ur goal is to give effect to the legislature's intent and purpose."[12] Accordingly, we begin with the plain language of the incarceration exception, considering the literal meaning of each term and avoiding "interpretations that will render portions of a statute superfluous or inoperative."[13]

¶ 11 The phrase "arising out of" is very broad, general, and comprehensive.[14] In ordinary usage, it imports "a concept of causation" and is " 'ordinarily understood to mean originating from, incident to, or connected with the item in question.' "[15] The other phrases in the exception—"in connection with" and "results from"—similarly connote a causal link between the injury and the government activity for which sovereign immunity has not been waived. Thus, any injury that is caused by or originates from incarceration in a place of legal confinement falls within the incarceration exception.

¶ 12 In their briefs before this court, both parties focused on the spatial scope of the incarceration exception. To this end, they concentrated their arguments on whether the verbally defined patch of concrete where the troopers told Peck to stand was a "place of legal confinement." In so focusing their arguments, the parties have missed the forest for the trees. By concentrating on the meaning of the phrase "place of legal confinement," the parties failed to consider the broad introductory phrase that retains governmental immunity for all injuries "aris[ing] out of, in connection with, or result[ing] from" incarceration in a place of legal confinement. This oversight conflicts with the principle of statutory interpretation that requires us to avoid "interpretations that will render portions of a statute superfluous or inoperative."[16]

¶ 13 As we step back and look at the entire incarceration exception,[17] it is clear that it covers Peck's injury because there is a clear

8. *Blackner v. Dep't of Transp.*, 2002 UT 44, ¶ 10, 48 P.3d 949.

9. *Madsen v. State*, 583 P.2d 92, 93 (Utah 1978).

10. *Emery v. State*, 26 Utah 2d 1, 483 P.2d 1296, 1297 (1971); *Pace v. St. George City Police Dep't*, 2006 UT App 494, ¶ 6, 153 P.3d 789.

11. Utah Code Ann. § 63-30-10(10) (1997).

12. *Grappendorf v. Pleasant Grove City*, 2007 UT 84, ¶ 9, 173 P.3d 166.

13. *Hall v. State Dep't of Corr.*, 2001 UT 34, ¶ 15, 24 P.3d 958.

14. *Taylor v. Ogden City Sch. Dist.*, 927 P.2d 159, 163 (Utah 1996).

15. *Id.* (quoting *Nat'l Farmers Union Prop. & Cas. Co. v. W. Cas. & Sur. Co.*, 577 P.2d 961, 963 (Utah 1978)).

16. *Hall*, 2001 UT 34, ¶ 15, 24 P.3d 958.

17. "Immunity from suit of all governmental entities is waived for injury proximately caused by a negligent act or omission of an employee committed within the scope of employment except if the injury arises out of, in connection with, or results from ... (10) the incarceration of any person in any state prison, county or city jail, or other place of legal confinement." Utah Code Ann. § 63-30-10(10).

causal link between his injury and his incarceration in a place of legal confinement. Peck had been arrested, handcuffed, and asked to stand in front of the cruiser as he awaited imminent transportation to the county jail. In fact, Peck was standing outside of the police cruiser only because the arresting trooper needed to clear the back seat in order to transport Peck to the county jail. Peck's belligerence as he waited was the reason the trooper physically restrained him, and Peck's injury resulted from the restraint. Whether we refer to the police cruiser[18] or the county jail[19] as the place of legal confinement, the causal link between Peck's injury and his incarceration in a place of legal confinement is clear.

¶ 14 Defining the boundaries of the incarceration exception by focusing on the causal link between the injury and incarceration in a place of legal confinement is consistent with our precedent. For example, in *Epting v. State*, a prisoner escaped from a work release program and killed a woman.[20] Her children brought a negligence claim against the State. We concluded that their claim was barred by governmental immunity because the woman's death either arose out of the discretionary choice of placing the inmate in the work release program or arose out of his incarceration in the state prison.[21] Thus, in applying the term "arises out of . . . incarceration in a place of legal confinement," we focused on the causal connection between the injury and incarceration in a place of legal confinement, rather than focusing spatially on whether the actual injury occurred within a "place of legal confinement."

¶ 15 The court of appeals adopted a similar approach in both *Kirk v. State*[22] and *Pace v. St. George City Police Department*.[23] In *Kirk*, a prison inmate escaped while being transported to the Hall of Justice to attend court proceedings.[24] In the course of his escape, he shot an unarmed bailiff, who then brought a negligence suit against the State for his injuries. Focusing on the causal connection between the injury and incarceration in a place of legal confinement, the court of appeals held that governmental immunity applied because the "injury [was] caused by an incarcerated person under the control of the State."[25] Similarly, in *Pace*, the court of appeals held that governmental immunity applied to a suicide death that occurred in the police department bathroom because the death occurred " 'in connection with' " the individual's incarceration in a " 'place of legal confinement.' "[26]

¶ 16 Due to the clear causal link between Peck's injury and his imminent transportation in a police cruiser to the county jail, we hold that his claim is barred by section 63–30–10(10) because his injury arose out of, in connection with, or resulted from incarceration in a place of legal confinement. We leave for another day whether a trooper or a police officer may create a place of legal confinement by verbally defining physical boundaries and directing an individual to stand within those boundaries.

**CONCLUSION**

¶ 17 Peck's injury occurred after he had been arrested and incarcerated and as he waited to be transported in a police cruiser to the county jail. There is a clear causal link between his injury and his incarceration in either the county jail or the police cruiser. Accordingly, his injury arose out of his incar-

---

18. *State v. Burgess–Beynon*, 2004 UT App 312, ¶¶ 8–11, 99 P.3d 383 (holding that the phrase "other place of confinement," as used in Utah Code section 76–8–418 (2002), included the backseat of a police cruiser because a police vehicle can act as a temporary jail).

19. *Madsen v. State*, 583 P.2d 92, 93 (Utah 1978) (holding that the plain meaning of section 63–30–10(10) retained immunity for "injuries occurring while the incarcerated person is in prison and under control of the State").

20. 546 P.2d 242, 243 (Utah 1976).

21. *Id.* at 244.

22. 784 P.2d 1255 (Utah Ct.App.1989).

23. 2006 UT App 494, 153 P.3d 789.

24. *Kirk*, 784 P.2d at 1256.

25. *Id.* at 1256–57 (internal quotation marks omitted).

26. *Pace*, 2006 UT App. 494, ¶ 7, 153 P.3d 789 (quoting Utah Code Ann. § 63–30d–301(5)(j)).

ceration in a place of legal confinement, and Peck is barred from pursuing his negligence claim against the State because his injury is covered by the plain language of Utah Code section 63–30–10(10), which retains governmental immunity for injuries that "arise[ ] out of, in connection with, or result from . . . incarceration . . . in any state prison, county or city jail, or other place of legal confinement." Reversed and remanded.

¶ 18 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice NEHRING concur in Justice PARRISH's opinion.