2013 UT App 10

# THE UTAH COURT OF APPEALS

TODD GLAITTLI,

*Plaintiff and Appellant,*

*v.*

STATE OF UTAH,

*Defendant and Appellee.*

Opinion
No. 20100733-CA
Filed January 10, 2013

Third District, West Jordan Department
The Honorable Bruce C. Lubeck
No. 100400120

Daniel F. Bertch and Kevin K. Robson,
Attorneys for Appellant
John E. Swallow and Bridget K. Romano,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion,
in which JUDGES CAROLYN B. MCHUGH
and J. FREDERIC VOROS JR. concurred.

CHRISTIANSEN, Judge:

¶1     Plaintiff Todd Glaittli appeals the trial court's dismissal of his negligence action against the State of Utah. He claims that the trial court erred by concluding that the State was immune from suit under the "natural condition" exception to the waiver of immunity provided in the Governmental Immunity Act of Utah. We affirm.

BACKGROUND

¶2     Because we are reviewing a motion to dismiss, we state the facts as they are alleged in the complaint. *See Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 2, 24 P.3d 95. Glaittli owned a twenty-five foot cabin cruiser boat that he kept docked at a marina at the Jordanelle Reservoir. The State, through its Division of Parks & Recreation and Jordanelle State Park, owns and operates the Jordanelle Reservoir, including the marina, docks, and boat slips relevant to this case. Glaittli's boat was tethered to a boat slip at a floating dock, which is connected to the shore by cables. State employees lengthen or shorten the cables with a hand-operated winch according to the water level in the reservoir to "prevent boats tied off to the dock from being damaged by bowlines that are too short or too long. Among other things, failure to adjust these cables can allow the boats to strike the dock or other boats, especially during periods of wave action on the reservoir surface." The master plan for the Jordanelle Reservoir anticipated that the marina and floating docks would be protected by a breakwater. However, no breakwater was built and the docks are exposed to the waves on the reservoir.

¶3     In June 2008, the water levels were rising and required frequent adjustments of the cables. On June 10, Glaittli learned about a storm in the area of Jordanelle Reservoir, "which [would] create[] large waves." Realizing that "the wave action was significant enough to warrant his personal attention to his boat," Glaittli proceeded to the marina, where he

> saw large waves, causing his large boat to heave to a degree that he feared his boat would strike the dock or other boats. [He] walked out onto the dock, to lengthen the lines on his boat, to allow it to ride the waves more freely, without risk to it or other boats. . . . While [he] was standing on the dock,

> he was struck by the bow of his boat,
> shattering his upper arm and shoulder,
> causing him to fall to the dock, injuring
> his shoulder, arm and other parts of his
> body.

Glaittli alleges that the State caused his injuries by its negligent "[f]ailure to adjust the dock level with the water levels by turning the winch handles"; "[f]ailure to warn [him] of an unsafe condition at the docks, created by its failure to adjust the dock levels"; and '[f]ail[ure] to properly secure the docks on the day of the accident allowing users in an area that [it] either knew or should have known was dangerous." He also alleges that the State negligently "[a]llow[ed] a hazardous condition to continue to exist by failing and refusing to construct a breakwater in the area of the [m]arina where [Glaittli's] boat was docked."

¶4     The State responded with a motion to dismiss for failure to state a claim based on the Governmental Immunity Act of Utah, arguing that Glaittli's injuries fell within the "natural condition" exception to the waiver of immunity. *See* Utah Code Ann. § 63G-7-301(5)(k) (LexisNexis 2011) (retaining immunity when the "injury arises out of, in connection with, or results from . . . any natural condition on publicly owned or controlled lands"). The trial court agreed that Glaittli's injuries "arose out of, in connection with, or resulted from the storm-created large waves on Jordanelle Reservoir, a 'natural condition on publicly owned or controlled lands.'" (Quoting Utah Code Ann. § 63G-7-301(5)(k).) Accordingly, the trial court dismissed the complaint and this appeal followed.

ISSUE AND STANDARD OF REVIEW

¶5     Glaittli argues that the trial court erred in dismissing his complaint because the Governmental Immunity Act of Utah waives the State's immunity for the injuries he suffered and the conduct here does not fall within the natural condition exception to that

waiver. "A trial court's decision to dismiss a case based on governmental immunity is a determination of law that we afford no deference." *Hall*, 2001 UT 34, ¶ 11; *see also Blackner v. State Dep't of Transp.*, 2002 UT 44, ¶ 8, 48 P.3d 949. "Additionally, determining the scope of an exception to the waiver of governmental immunity is a question of statutory interpretation that we also review for correctness." *Peck v. State*, 2008 UT 39, ¶ 7, 191 P.3d 4; *see also Blackner*, 2002 UT 44, ¶ 8.

## ANALYSIS

¶6 The issue on appeal is whether the State is immune from suit under the Governmental Immunity Act of Utah (the Act). *See generally* Utah Code Ann. §§ 63G-7-101 to -904 (LexisNexis 2011 & Supp. 2012). The Act is the latest in a series of statutes through which the Utah Legislature has identified circumstances where the immunity the State enjoyed at common law is waived. *See Tindley v. Salt Lake Sch. Dist.*, 2005 UT 30, ¶ 9, 116 P.3d 295. The Act contains broad waivers of immunity for certain governmental functions, which are then limited by specific exceptions. *See* Utah Code Ann. § 63G-7-301 (LexisNexis 2011). Therefore, "to determine whether a governmental entity is immune from suit under the Act, we apply a three-part test, which assesses (1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver." *Blackner*, 2002 UT 44, ¶ 10.

¶7 The State concedes that its activities relative to maintaining and operating the Jordanelle Reservoir, including the marina and floating dock, served a governmental function. In addition, for purposes of the Motion to Dismiss only, the State concedes an initial immunity waiver because Glaittli alleged that his injuries were "proximately caused by a negligent act or omission of an employee committed within the scope of employment." *See* Utah Code Ann. § 63G-7-301(4) (the negligence waiver). Glaittli also contends that immunity has been initially waived because his

injuries were caused by a "defective or dangerous condition of a public building, structure, dam, reservoir, or other public improvement."[1] *See id.* § 63G-7-301(3)(a)(ii) (the public improvement waiver). The parties disagree as to whether the State retained its immunity pursuant to an exception to either waiver.[2]

## I. Waivers of Immunity

¶8      "When interpreting a statute, our goal is to give effect to the legislature's intent and purpose*." Grappendorf v. Pleasant Grove City*, 2007 UT 84, ¶ 9, 173 P.3d 166. To accomplish this,

> we begin with the statute's plain language. In conducting a textual analysis, we consider the literal meaning of each term and "avoid interpretations that will render portions of a statute superfluous or inoperative." The plain language of any specific provision should be read in harmony with other provisions in the same statute.

*Id.* (quoting *Hall v. Utah State Dep't of Corr.*, 2001 UT 34, ¶ 15, 24 P.3d 95) (additional citations omitted)).

¶9      Here, subsection (3) of the waiver provisions of the Act contains the public improvement waiver, *see* Utah Code Ann.

---

[1]Although we agree with the State that Glaittli did not preserve his argument under the public improvement waiver, that provision does not affect our analysis because both the negligence waiver and the public improvement waiver are equally affected by the natural condition exception.

[2]The State also does not contest that the injuries occurred on publicly owned and controlled lands.

§ 63G-7-301(3)(a)(ii), and subsection (4) of that same section sets forth the negligence waiver, *see id.* § 63G-7-301(4). Thus, if Glaittli's injuries were proximately caused by a defective or dangerous condition on a public improvement, including a floating dock or a reservoir, or were proximately caused by the negligence of a State employee acting within the scope of the employee's duties, the Act provides that governmental immunity is waived.

## II. Exceptions to the Waiver of Immunity

¶10    However, this is not the end of our inquiry under the Act. Although immunity has been initially waived for these categories of conduct, the Act expressly exempts a subset of conduct from the waiver of immunity. *See id.* § 63G-7-301(5). Of importance for our purposes is the Act's provision that "[i]mmunity from suit of each governmental entity is not waived under Subsections (3) and (4) if the injury arises out of, in connection with, or results from: . . . (k) any natural condition on publically owned or controlled lands." *See id.* § 63G-7-301(5)(k).

¶11    As an initial matter, Glaittli contends that the natural condition exception is inapplicable for an injury caused as a result of a defective public improvement because once manmade structures are built on natural land or water, they become "public improvements," and are no longer "natural conditions." However, such a reading would misconstrue the plain language of the exception, which clearly indicates that it applies to both subsections (3) and (4). *See* Utah Code Ann. § 63G-7-301(5)(k) (LexisNexis 2011). Indeed, because subsection (3) waives immunity for injuries caused only by manmade structures, yet is expressly included as limited by the natural condition exception contained in subsection (5), Glaittli's reading would be directly contrary to the plain language of the Act. *See id.* § 63G-7-301(3)(a)(i) (waiving immunity for injuries caused by defective or dangerous conditions of a "highway, road, street, alley, crosswalk, sidewalk, culvert, tunnel, bridge, viaduct, or other structure located on them"); § 63G-7-301(3)(a)(ii) (waiving immunity for any defective or dangerous

condition of a "public building, structure, dam, reservoir, or other public improvement"). Thus, irrespective of whether immunity may have been initially waived under the negligence provision of the Act, *see id.* § 63G-7-301(4), or the public improvement provision of the Act, *see id.* § 63G-7-301(3)(a)(ii), the State continues to enjoy immunity if Glaittli's injuries arose out of, occurred in connection with, or resulted from a natural condition. We undertake that analysis now.

¶12    Glaittli argues that "the wind that caused the waves that caused the floating dock to 'heave' was an 'atmospheric' condition, not a 'natural' condition of land, within the meaning of the 'natural condition' [exception]." We consider two decisions from the Utah Supreme Court instructive to our analysis of this argument: *Blackner v. Utah Department of Transportation*, 2002 UT 44, 48 P.3d 949, and *Grappendorf v. Pleasant Grove City*, 2007 UT 84, 173 P.3d 166.

¶13    In *Blackner*, the earlier of these decisions, two avalanches swept onto a state-controlled road. 2002 UT 44, ¶¶ 3–6. After the first avalanche, the plaintiff and other drivers were instructed to wait for workers to clear the road. *Id.* ¶ 4. While they were detained, the second avalanche caused additional snow and debris to fall onto the road, injuring the plaintiff. *Id.* ¶ 6. The plaintiff sued the State and the Town of Alta, alleging that immunity was not retained. *Id.* ¶ 7. Although the plaintiff did not deny that the first avalanche was a natural condition, he argued that the negligent response to that natural condition proximately caused his injuries. *See id.* ¶ 13. The supreme court explained the natural condition exception as it applied to those facts as follows:

> The Act unequivocally provides that when a *plaintiff's injury* either "arises out of[ ][or] in connection with, or results from" a "natural condition on publicly owned or controlled lands," governmental immunity is retained

> with respect to any action to recover for injuries *proximately caused by a government employee's negligence.* The application of the "natural condition" exception to the waiver of governmental immunity does not hinge on whether the "natural condition" in any way "proximately caused" the plaintiff's injuries. . . .
>
> [E]ven assuming that the actions of [the government employees] were negligent and proximately caused Blackner's injuries, UDOT and Alta are immune from suit to recover for those injuries because Blackner's injuries arose out of a natural condition on publicly owned or controlled land. The first avalanche and the snow pack from which both avalanches originated were natural conditions.

*Id.* ¶¶ 13–14 (first and second alterations in original) (quoting Utah Code Ann. § 63-30-10(11) (Michie 1997) (current version at Utah Code Ann. § 63G-7-301(5)(k) (LexisNexis 2011))).

¶14    Five years after *Blackner*, the Utah Supreme Court decided *Grappendorf*. In that case, a "violent gust of wind" ripped Pleasant Grove City's moveable pitching mound weighing several hundred pounds from the strap tethering it to a chain link fence, and propelled it through the air. *See Grappendorf*, 2007 UT 84, ¶¶ 1–2. Tragically, the mound struck and killed a thirteen-year-old child walking through the city park with his parents. *See id.* The parents brought a wrongful death action against the city, but the trial court granted summary judgment based on the natural condition exception to the waiver of immunity for negligence. *Id.* ¶ 3. In reversing summary judgment in favor of the city, the supreme

court noted that the plain language of the natural condition exception applied only "'if the injury arises out of, in connection with, or results from . . . any natural condition on publicly owned or controlled lands.'" *Id.* ¶¶ 8–10 (quoting Utah Code Ann. § 63-30-10(11) (Michie 1997) (current version at Utah Code Ann. § 63G-7-301(5)(k) (LexisNexis 2011))). Because a wind gust cannot exist "on" the land, the court concluded that it was an atmospheric, not a natural, condition. *See id.* ¶ 10. The court explained,

> Natural condition is . . . limited by the prepositional phrase "on publicly owned or controlled lands." In this context, "on" is "[u]sed to indicate . . . [a] [p]osition above and in contact with" or "[c]ontact with a surface, regardless of position." From these definitions, it follows that a natural condition "on" the land must be topographical in nature, not merely atmospheric. The limiting prepositional phrase requires that the natural condition be in physical contact with the land, supported by the surface of the land, or part of the land.

*Id.* (alterations and second omission in original) (quoting *Webster's II New College Dictionary* 764 (1995)).

¶15     In *Grappendorf*, the supreme court distinguished the atmospheric quality of the wind from the snow in *Blackner*, stating that "[t]he snow that caused the injury was a natural condition in physical contact with the land." *Grappendorf*, 2007 UT 84, ¶ 14 (citing *Blackner*, 2002 UT 44, ¶ 14). The *Grappendorf* court also distinguished a river in *Stuckman ex rel. Nelson v. Salt Lake City*, 919 P.2d 568 (Utah 1996), explaining that a river "falls within the natural condition exception because it flows directly above and in contact with the land." *Grappendorf*, 2007 UT 84, ¶ 14 (quoting

*Stuckman*, 919 P.2d at 575). In holding that the gust of wind was not a natural condition, the supreme court reasoned, "[w]ere we to ignore the statute's limitation that the natural condition be on the land, the natural condition exception would necessarily swallow the Act's waiver of immunity for negligence." *Id.* ¶ 11.

¶16    The factual scenario here differs from *Grappendorf* in that the wind created large waves on the water contained in the Jordanelle Reservoir. Even accepting that the wind is an atmospheric condition, Glaittli's injuries arose out of, were connected with, or resulted from the water. In turn, the water is *on* the land because it has surface contact with it. As a result, the present facts are more similar to those addressed in *Blackner*. While an atmospheric condition such as the heat of the sun may have acted on the snow pack to cause the avalanche, the snow pack itself was a natural condition. Here, the wind, an atmospheric condition, acted on the water to create the waves.

¶17    Nevertheless, Glaittli contends that the water is not a natural condition because it is contained in a reservoir, as opposed to a natural lake. This is an issue of first impression in Utah, which we resolve in favor of the State. There is no question that when the water was contained only in the Provo River, it was a natural condition existing on the land. *See Stuckman*, 919 P.2d at 574. It is also apparent that the dam which caused the water to overflow the banks of the river and pool into a body of standing water is not a natural condition. *See* Utah Code Ann. § 63G-7-301(3)(a)(ii) (Lexis Nexis 2011) (including dam within list of public improvements). The creation of the dam, however, does not change the basic nature of the water itself, which is a natural condition that has simply expanded onto a greater area of publicly-owned land. Therefore, we hold that the water upon which the wind acted was a natural condition.[3]

---

[3]Although there is no Utah authority on this point, the

(continued...)

¶18    Thus, even assuming that the negligent actions of government employees or the defective condition of the reservoir or floating dock proximately caused Glaittli's injuries, his injuries arose out of, were in connection with, or resulted from a natural condition on publicly owned or controlled land. *See id.* § 63G-7-301(5)(k). Accordingly, we agree with the trial court that the natural condition exception to the waiver of immunity is applicable and bars Glaittli's suit.[4]

---

[3](...continued)
California Court of Appeal has considered similar issues. *See Osgood v. County of Shasta*, 123 Cal. Rptr. 442, 444–45 (Cal. Dist. Ct. App. 1975) (holding that the county was immune from suit for injuries incurred in a collision on a manmade lake under the California Tort Claims Act, which provides governmental immunity "'for an injury caused by a natural condition of any unimproved public property, including but not limited to *any* natural condition of *any* lake, stream, bay, river or beach'" (quoting Cal. Gov. Code § 831.2)); *Knight v. City of Capitola*, 6 Cal. Rptr. 2d 874 (Cal. Dist. Ct. App. 1992) (holding that a shorebreaking wave was a natural condition, even if caused by manmade improvements to the beach).

[4]Were we to overlook the effect of the waves and focus instead only on the atmospheric character of the wind, as Glaittli suggests, then the natural condition exception to the waiver of immunity would be meaningless. Under Glaittli's reasoning, if he had taken his boat out into the middle of a natural lake on public land and a storm and high winds arose, causing large waves to heave the boat in such a way that caused him injury, the wind-caused waves would not be a natural condition. Yet that scenario is exactly why the legislature created the natural condition exception. "The necessity for this exception arises because 'Utah's vast public lands . . . are open to the public for

(continued...)

CONCLUSION

¶19    Based on Glaittli's pleaded facts, the wind-caused waves on the Jordanelle Reservoir that caused his injuries were a natural condition. Glaittli's injuries arose out of, were suffered in connection with, or resulted from that natural condition. Thus, the trial court correctly dismissed the complaint as barred by governmental immunity.

————————————

[4](...continued)
recreational uses [and] present all kinds of hazards arising from their natural conditions. . . . The State  . . . cannot be expected to [protect citizens against] every . . . potentially hazardous condition located on public property.'
*Grappendorf v. Pleasant Grove City*, 2007 UT 84, ¶ 8, 173 P.3d 166 (alterations and omissions in original) (quoting *Stuckman ex rel. Nelson v. Salt Lake City*, 919 P.2d 568, 575 (Utah 1996)).