Associate Chief Justice NEHRING,
opinion of the Court:
INTRODUCTION
T1 This case requires us to once again define the contours of the "natural condition" exception to the waiver provision of the Governmental Immunity Act of Utah.
T2 Appellant Todd Glaittli sued the State of Utah for injuries he suffered when his boat "heaved" and struck him, shattering his shoulder. Mr. Glaittli claimed his injuries were due to the negligent adjustment of a floating dock at Jordanelle Reservoir, where he kept his boat. The State claimed governmental immunity and moved to dismiss the claim under rule 12(b)(8) of the Utah Rules of Civil Procedure. The district court granted the motion, concluding that Mr. Glaittlf's injuries fell within the "natural condition" exception to the waiver of immunity. The court of appeals affirmed. We reverse and hold that a reservoir is not a natural condition on the land under the Utah Governmental Immunity Act, Utah Code section 68G-T-~ 301(5)(k).
BACKGROUND
13 Todd laittli was the owner of a twenty-five foot cabin cruiser boat that he docked in the marina at Jordanelle Reservoir.[1] The marina, docks, boat slips, and reservoir are owned by the State of Utah and operated by the Utah Division of Parks & Recreation and Jordanelle State Park. Mr. CGlaittli's boat was tethered to a boat slip on a floating dock, which was connected to the shore by eight cables. Using a hand-operated winch, state employees could lengthen or shorten the dock cables as needed. The length of the cables was important. Because the dock was floating, its position could be altered by the water level of the reservoir, wind, or other forces that disturbed the water surface. Failure to properly adjust the cables risked allowing the boats to "strike the dock or other boats, especially during periods of wave action." Although the Jor-danelle Reservoir master plan recommended the creation of a breakwater to protect the docks from waves, no breakwater was ever built.
T4 In early June 2008, the water levels of Jordanelle Reservoir were rising at a rate of approximately one foot per day, requiring "frequent, if not daily, adjustment of the cable tether length" of the docks. On June 10, 2008, a storm hit the area and "created large waves on the reservoir." Mr. Glaittli believed the "wave action" created by the storm was "significant enough to warrant personal attention to his boat." When Mr. Glaittli arrived at the marina,
he saw large waves, causing his large boat to heave to a degree that he feared his boat would strike the dock or other boats. [He] walked out onto the dock, to lengthen the lines on his boat, to allow it to ride the waves more freely .... The lines were so taut that he was unable to loosen them. While [Mr. Claittli] was standing on the dock, he was struck by the bow of his boat, shattering his upper arm and shoulder, causing him to fall to the dock, [resulting in injuries to] his shoulder, arm and other parts of his body.
15 Mr. Claittli attributes his injuries to the State's failure to: "adjust the dock level with the water levels;" "warn [him] of an unsafe condition at the docks;" "properly secure the docks;" and finally, to "construct a breakwater" for the marina.
T 6 The State claimed governmental immunity and moved to dismiss Mr. Glaittli's complaint. The parties agreed that the activity was a government function, and the State conceded for the purposes of the motion to dismiss that Mr. Glaittli's injury was "proxi *955 mately caused by a negligent act or omission of an employee committed within the seope of employment"-meaning that governmental immunity would be generally waived.[2] The district court thus evaluated only whether there was an exception to the general waiver rule that would allow the State to retain its immunity. Proceeding under Utah Code seetion 63G-7-301(5)(k), the district court found that the waves were a "natural condition" that caused Mr. Glaittli's injury, and thus the State retained its immunity. The district court then dismissed Mr. Glaittli's complaint for failure to state a claim upon which relief could be granted. The Utah Court of Appeals affirmed, finding that the water and waves in the reservoir were a natural condition and that Mr. Glaittli's injuries "arose out of, were connected with, or resulted from" that natural condition.[3]
ISSUES AND STANDARD OF REVIEW
17 The single question on certiorari presents two distinct issues: (1) whether a reservoir is a "natural condition" under Utah Code section 63G-7-301(5)(k) and (2) # it is, whether Mr. Glaittli's injuries "ar[ose] out of, in connection with, or resulted] from" that natural condition.[4] Because we hold that the reservoir is not a natural condition, the see-ond issue is irrelevant and we do not address it. We instead remand for further proceedings consistent with this opinion, including a determination of negligence under the negli-genee waiver provision.
{8 "When reviewing a court of appeals decision affirming a grant of a rule 12b)(6) motion to dismiss, we review the decisions of the court of appeals rather than that of the trial court ... for correctness." [5] Moreover, "determining the scope of an exception to the waiver of governmental immunity is a question of statutory interpretation that we also review for correctness." [6]
ANALYSIS
T9 Whether a reservoir is a "natural condition on [the] land[ ]" under section 68G-7-301(5)(k) of the Governmental Immunity Act of Utah is an issue of first impression in this court. The court of appeals held that the natural condition exeeption applied because it reasoned that the waves caused Mr. Glaittli's injury, waves are made of water, and the "basic nature" of water is that it is a natural condition.[7] The court of appeals held that the presence of a dam did not "change the basic nature of the water itself" because the water had "simply expanded onto a greater area" (i.e., into the reservoir).[8]
" 10 In interpreting the term "natural condition" we cannot focus our inquiry too "broadly," for if we were to do so, the statute's natural condition exeeption would largely "swallow the Act's waiver of immunity for negligence."[9] This is because, as we noted in Grappendorf, "[clonsidered broadly, natural conditions include laws of physics, such as gravity, that necessarily contribute to any *956 accident or occurrence." [10] Moreover, as we noted in Francis v. State, "we must exercise caution when interpreting an inexact term" (like "natural") because "its meaning could be stretched to include almost anything." [11] The court of appeals reached its conclusion by focusing on whether the wave and the water it was made of were a "natural condition." This was error.[12]
111 In Blackner v. State, an avalanche fell onto a road, injuring the plaintiff.[13] We held that the avalanche was a natural condition.[14] The instant case is distinguishable because a road is separate and distinct from an avalanche in a way that waves are not separate and distinet from the body of water on which they occur. The waves and the body of water are "so closely related" that they "cannot be encountered independently." [15] Thus, the court of appeals focused too broadly [16] when it considered the "basic nature" of water itself.[17] The proper question is whether the reservoir was a natural condition upon the land. We hold that it was not.
112 Our statute reads, in pertinent part, [immunity from suit of each governmental entity is waived as to any injury proximately caused by a negligent act or omission of an employee.... [But is]} not waived ... if the injury arises out of, in connection with, or results from ... (k) any natural condition on publicly owned or controlled lands.[18]
In other words, the government loses its immunity if a government employee negligently causes injury, but negligence or not, the government retains its immunity if the injury arose out of a natural condition on public lands.[19]
1 18 A reservoir is topographical in nature and, following our recent decision in Francis, is thus indisputably a "condition on the land."[20] The question then, is whether a reservoir is "natural." We hold that it is not. In Grappendorf, we defined "natural" as "[plresent in or produced by nature." [21] According to Black's Law Dictionary, something natural is "[blrought about by nature as opposed to artificial means."[22] As the Illinois Supreme Court reasoned in 2008, "unlike a natural body of water, which exists because of natural processes, an artificial body of water is the result of someone's labor."[23] And a reservoir is certainly brought about by human labor.[24]
*957 T14 Jordanelle Dam and Reservoir was constructed from 1987 through 1992 by the United States Bureau of Reclamation in order to store water for municipal and industrial use.[25] After it was built, a highway had to be relocated and two small towns were completely submerged.[26] The reservoir was thus imagined, built, and brought about by "human efforts," not nature.[27] Were it not for human efforts in building the Jordanelle Dam, the Jordanelle Reservoir would not exist and in its place would remain the naturally flowing Provo River.[28]
115 Because the reservoir was designed and created by human activity, and because it would not exist but for that activity, we hold that the Jordanelle Reservoir is not a natural condition on the land.
CONCLUSION
1 16 We therefore reverse and remand to the district court for a determination of whether a government employee proximately caused Mr. Glaittli's injury through a negligent act or omission and for all other proceedings as necessary and consistent with this opinion.

. Because we are reviewing a motion to dismiss, we state the facts "as they are alleged in the complaint." Hall v. Utah State Dep't of Corr., 2001 UT 34, ¶ 2, 24 P.3d 958. Additionally, we "accept the factual allegations in the complaint as true and consider all reasonable inferences to be drawn from those facts in a light most favorable to the plaintiff," Id. (internal quotation marks omitted).

. Cope § 63G-7-301(4) (Immunity from suit of each governmental entity is waived as to any injury proximately caused by a negligent act or omission of an employee committed within the scope of employment."); see Blackner v. State, 2002 UT 44, ¶ 10, 48 P.3d 949 (stating that the inquiry for governmental immunity is "(1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver").

. Glaittli v. State, 2013 UT App 10, ¶ 16, 294 P.3d 626.

. Urax Cope § 63G-7-301(5)(k).

. Wagner v. State, 2005 UT 54, ¶ 9, 122 P.3d 599 {alteration in original) (internal quotation marks omitted).

. Peck v. State, 2008 UT 39, ¶ 7, 191 P.3d 4; Francis v. State, 2013 UT 65, ¶ 19, 321 P.3d 1089 ("[Wlhether the district court accurately interpreted the Immunity Act is a legal question that we review for correctness.").

. Glaittli v. State, 2013 UT App 10, ¶ 17, 294 P.3d 626. Thus, the court of appeals did not hold that the reservoir is a natural condition, as the question presented on certiorari suggests. It held that "the water upon which the wind acted was a natural condition." Id.

. Id.

. Grappendorf v. Pleasant Grove City, 2007 UT 84, ¶ 11, 173 P.3d 166.

. Id.

. Francis v. State, 2013 UT 65, ¶ 45, 321 P.3d 1089.

. Following such reasoning leads to an absurdity given that everything can be viewed as "natural" at some level. See, eg., Grappendorf, 2007 UT 84, ¶ 11, 173 P.3d 166.

. 2002 UT 44, ¶¶ 2-6, 48 P.3d 949.

. Id.116.

. Davis v. State, 144 Wash.2d 612, 30 P.3d 460, 463 (2001) (distinguishing Ravenscroft v. Wash. Water Power Co., 136 Wash.2d 911, 969 P.2d 75 (1998) and holding that tire tracks in sand leading to a drop off was not an artificial condition and was thus fundamentally different from the condition in Ravenscroft, where a reservoir was an "artificial external circumstance" that "could not reasonably be analyzed as independent" from a submerged stump).

. Grappendorf, 2007 UT 84, ¶ 11, 173 P.3d 166.

. Glaittli, 2013 UT App 10, ¶ 17, 294 P.3d 626.

. Urax Cope § 63G-7-301(4), (5).

. The State concedes that its activities served a governmental function. The State also concedes, for the purpose of the motion to dismiss only, that there is "an initial immunity waiver because [Mr.] Glaittli alleged that his injuries were 'proximately caused by a negligent act or omission of an employee committed within the scope of employment.'" Glaiftli, 2013 UT App 10, ¶ 7, 294 P.3d 626 (quoting Uran Cope section 63G-7-301(4)).

. 2013 UT 65, ¥42, 321 P.3d 1089 (''condition on the land" seems to connote features that have a ... tie to the land itself, such as rivers, lakes, or trees.... We accordingly limit application of the natural condition exception to those conditions that are closely tied to the land or that persist 'on the land'-conditions that are topographical in nature.").

. Grappendorf, 2007 UT 84, ¶ 10, 173 P.3d 166 (alteration in original).

. Buack's Law Dictionary 1126 (9th ed. 2009).

. Alderson v. Fatlan, 231 Ill.2d 311, 325 Ill.Dec. 548, 898 NE.2.d 595, 601 (2008) (discussing whether a water-filled quarry was an "artificial body of water" for purposes of riparian water rights); see also Davis, 30 P.3d at 462 ("[Alrtifi- *957 cial' means 'contrived through human art or effort and not by natural causes detached from human agency: relating to human direction or effect in contrast to nature ... formed or established by man's efforts, not by nature.'" (quoting Waesster's THirp New Internationat Dictionary 124 (1986))).

. See Wesster's Tuirp New Internationat Dictio-wary 1931 (1961) (defining reservoir as "a place where water is collected and kept in quantity for use when wanted; esp: an artificial lake in which water is impounded for domestic and industrial use, irrigation, hydroelectric power, flood control, or other purposes" (emphasis added)).

. Jordanelle Dam, Usitsn States Bureau or Recia-mation, https://www.usbr.gov/projects/Facility.jsp? fac_Name=Jordanelle+ Dam & group-Name=Overview (last updated Mar. 5, 2009).

. Jordanelle Reservoir, Wixirepiacom, http://en. wikipedia.org/wiki/Jordanelle_Reservoir (last updated Mar. 21, 2014); Frank Brusca, Jordanelle Reservoir/Ross Creek Valley, Routr4O0.mEt, http:// www.route40.net/page.asp?n=10846 (last updated Dec. 23, 2010, 5:32 PM).

. Davis, 30 P.3d at 462 n. 2; see also Raven-scroft, 969 P.2d at 82 (acknowledging that a reservoir is artificial because "[the natural water channel was enlarged artificially ... [and] was not configured by nature but by man").

. Weber ex rel. Weber v. Springville City, cited by the State, is inapposite. 725 P.2d 1360 (Utah 1986). In that case we noted that "a natural watercourse does not cease to be such because of artificial changes" such as being "artificially obstructed, and all the water diverted therefrom, as where the water has all been dammed at a place far up the stream." Id. at 1366 (internal quotation marks omitted). This quotation cites principles of water law that are inapplicable here. In Weber, the court was concerned with the question of whether a creek was a "natural watercourse" for purposes of the attractive nuisance doctrine. Id. at 1364. However, here we are asked to interpret "natural condition" as used in the Governmental Immunity Act of Utah. Mr. Glaittli's claim does not concern the flow of the Provo River into or out of the reservoir, and the question posed by this case is not one of common tort or water law. Accordingly, we conclude that Weber is distinguishable.